UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>EDGAR BALDERAS, JR.,<br><br>Defendant. | Criminal Action No. 23-73-22 (CKK) |

**MEMORANDUM OPINION**
(May 15, 2024)

Defendant Edgar Balderas, Jr. is charged by indictment with conspiring to distribute, with others, thousands of counterfeit pills laced with fentanyl. On November 16, 2023, Magistrate Judge Barbara L. Major of the United States District Court for the Southern District of California ordered Defendant detained pending trial. Detention Order, ECF No. 6, *United States v. Balderas, Jr.*, 23-mj-4191. Before the Court is Defendant's [312] Motion for Review of Detention ("Motion" or "Mot."). Defendant requests that the Court review his detention order and release him on pretrial conditions. Mot. at 1. The Government opposes Defendant's Motion. *See* Gov't's Opp'n, ECF No. 320. Upon consideration of the pleadings,[1] the relevant legal authority, and the record before the Court, the Court shall **DENY** Defendant's [312] Motion for Review of Detention.

## I. BACKGROUND

### A. Procedural Background

On March 9, 2023, the Government filed an indictment against Defendants Hector David Valdez, Craig Eastman, and Charles Jeffrey Taylor. ECF No. 1 (sealed). Additional defendants

---

[1] The Court's consideration has focused on:
- Defendant's Motion for Review of Detention, ECF No. 312; and
- The Government's Opposition to Defendant's Motion for Review of Detention ("Gov't's Opp'n"), ECF No. 320, and exhibits therein.

1

were indicted on April 26 and May 18, 2023.  ECF No. 25; ECF No. 74  On November 6, 2023, a grand jury returned a third superseding indictment, adding, among others, Defendant Balderas.  ECF No. 134 (sealed).  On November 17, 2023, a grand jury returned a fourth superseding indictment—the operative indictment—in this matter.  ECF No. 174.  Following the third superseding indictment, Magistrate Judge Robin M. Meriweather of this jurisdiction issued an arrest warrant for Defendant, which was executed on November 14, 2023 in San Diego, California.  ECF No. 283.  On November 16, 2023, Defendant appeared before Magistrate Judge Major, who ordered Defendant to be detained pending trial.  *See* Detention Order, ECF No. 6, *United States v. Balderas, Jr.*, 23-mj-4191.  On February 29, 2024, a warrant of removal to the District of Columbia was issued.  *See* ECF No. 15, *United States v. Balderas, Jr.*, 23-mj-4191.  On March 13, 2024, Defendant made his first appearance in the District of Columbia before Magistrate Judge Moxila Upadhyaya.  *See* Minute Entry (Mar. 13, 2024).

Defendant filed the pending Motion on April 20, 2024, requesting the Court to review his detention order and set conditions of release.  ECF No. 312.  The Government opposes Defendant's Motion, filing its opposition on May 6, 2024.  ECF No. 320.

**B.  Factual Allegations**

In its opposition, the Government details the allegations against Defendant, including messages exchanged between Defendant and co-Defendant Valdez, as well as additional messages from another individual on social media indicating that Defendant was distributing illicit drugs.  Broadly, the Government alleges that Defendant was a "wholesale distributor of pills," including "fentanyl that was disguised and passed off as legitimate oxycodone."  Gov't's Opp'n at 20.

To support its claims, the Government recounts purported messages between Defendant and Valdez.  *Id.* at 15–17.  For example, on December 20, 2022, Defendant messaged Valdez,

attaching an "image of a clear bag of blue pills that appear to be counterfeit" fentanyl pills. *Id.* at 15. Valdez responded, stating "I need those !!!" and "Those the ones." *Id.* Defendant then asked "How many papa," followed by stating "This told me that he'll deliver 80k at .35." *Id.* The Government contends that Defendant meant 80,000 pills for $0.35 each. *Id.* Valdez then confirmed "[he was] down," and asked Defendant for an address. *Id.* at 15–16. Defendant provided his address and Valdez stated he would be there for "30," which the Government contends was an "apparent reference to 30,000 pills." *Id.* at 16.



*See id.* at 15 (the image of pills Defendant purportedly sent to Valdez). On December 27, 2022, Defendant allegedly messaged Valdez, asking "What time does your boy land." *Id.* at 16. Valdez responded, "Tomorrow. But I got other buyers." *Id.* The Government contends that Valdez's "pill customers would sometimes fly out to the Los Angeles area," and therefore Valdez was stating "that he has both an incoming buyer and other buyers who can purchase the pills." *Id.* According to the Government, Defendant then wrote that "[he] should get the other 25 ina couple of hours" and "Cash only weii." *Id.* Then, in the morning of December 28, 2022, Valdez messaged Defendant, stating he was "Pulling up," and Defendant told him "Come to my pad." *Id.* During

3

this period in December 2022, the Government claims that there were four (4) Apple Pay payments from Valdez to Defendant, totaling $4,350. *Id.* In addition, between December 2022 and February 2023, Valdez sent Defendant "more than $11,000 via Apple Pay." *Id.* The Government contends that the above interactions demonstrate that Valdez would meet with Defendant "to obtain thousands of pills that he could redistribute to his customers." *Id.*

Next, the Government recounts another purported conversation between Valdez and Defendant that occurred on February 17, 2023. *See id.* Valdez messaged Defendant, claiming "These boats are ugly af guey. My clients are right here picking at them." *Id.* Defendant asked Valdez to "[s]end a pic," which Valdez then provided a "picture of multiple clear plastic bags containing pill shaped items that appear to be light blue." *Id.* The Government further alleges that Valdez sent "a video picking up what appeared to be the same clear plastic bags." *Id.* at 17. According to the Government, this interaction indicates that Valdez was "complaining about the quality of the pills," and Defendant requested a photograph to confirm. *Id.*



*See id.* (the photograph Valdez allegedly sent to Defendant). The Government also explains that Defendant and Valdez would communicate via social media (Instagram), in addition to phone

4

messages. *Id.* Similarly, Defendant would use his social media account (Instagram account) to communicate with other individuals regarding the pills. *See id.* at 17–18. For instance, on January 13, 2022, Defendant allegedly messaged a social media user, asking "What can we do with blues," to which the user responded, "Everything but you need to get them real cheap." *Id.* at 17–18. Defendant stated that he "ha[s] like 3 boats," which the Government contends means 3,000 fentanyl pills. *Id.* at 18. The Government emphasizes Defendant's purported possession of illicit pills by highlighting an image recovered from his Instagram account, which appears to be a photograph of pills. *Id.*



*See id.* (photograph purportedly from Defendant's Instagram account).

In addition to his communications with Valdez, the Government claims that Defendant maintained relationships with other "D.C. co-conspirators." *Id.* According to the Government, co-Defendant Trayveon Johnson followed Defendant's account (presumably his Instagram account), and Defendant and Johnson "had phone calls over Instagram in March 2023." *Id.*

Lastly, the Government recounts what was recovered from Defendant's residence following his arrest. *See id.* According to the Government, law enforcement recovered "an unloaded Glock handgun with a magazine and 10 rounds of ammunition," as well as what appears

to be a "drug ledger." *Id.* Defendant's Instagram account also allegedly included photos of firearms. *Id.*



*See id.* (photographs allegedly extracted from Defendant's Instagram account).

## II.   LEGAL STANDARD

A defendant ordered detained by a magistrate judge may file "a motion for revocation or amendment of the order" with "the court having original jurisdiction over the offense." 18 U.S.C. § 3145(b). The Court applies *de novo* review to the question and is "free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons." *United States v. Sheffield*, 799 F. Supp. 2d 18, 20 (D.D.C. 2011) (BAH) (quoting *United States v. Hanson*, 613 F. Supp. 2d 85, 88 (D.D.C. 2009) (PLF)). "The motion shall be determined promptly." 18 U.S.C. § 3145(b).

In our society, "liberty is the norm" and "detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Bail Reform Act permits pretrial detention in only "carefully defined circumstances." *United States v. Simpkins*, 826 F.2d 94, 95–96 (D.C. Cir. 1987). A detention hearing must be held only if a case involves any of an enumerated set of offenses, including an offense "for which a maximum term of imprisonment of ten years or more is prescribed in[, *inter alia*,] the Controlled Substances Act,"

18 U.S.C. § 3142(f)(1)(C), or if the defendant poses a serious risk of flight or of trying to obstruct justice or threaten, injure, or intimidate a witness or juror, *id.* § 3142(f)(2)(A)–(B).

The question for the Court is whether any "condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(e)(1). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019). In determining whether a defendant should be detained pending trial, the Court must consider "the available information" concerning four (4) enumerated factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

"To justify detention on the basis of dangerousness, the government must prove by 'clear and convincing evidence' that 'no condition or combination of conditions will reasonably assure the safety of any other person and the community.'" *United States v. Munchel*, 991 F.3d 1273, 1279–80 (D.C. Cir. 2021) (quoting 18 U.S.C. § 3142(f)). That standard requires the Government to establish that the defendant "poses a concrete, prospective threat to public safety" that cannot be sufficiently mitigated by release conditions. *Id.* at 1280; *see also Salerno*, 481 U.S. at 751. "Detention cannot be based on a finding that defendant is unlikely to comply with conditions of release absent the requisite finding of dangerousness or risk of flight; otherwise[,] the scope of detention would extend beyond the limits set by Congress." *Munchel*, 991 F.3d at 1283. Detention based on risk of flight, on the other hand, requires the Government to prove by a preponderance of the evidence that there is no condition or combination of conditions that will assure the

7

defendant's appearance as required. *United States v. Vortis*, 785 F.2d 327, 328–29 (D.C. Cir. 1986).

### III. DISCUSSION

The Court concludes that the evidence presented by the Government in its briefing requires Defendant Balderas' detention pending trial.

**A. Legal Principles**

The Court shall begin by addressing the proper standard to apply at this stage of proceedings. As explained above, Defendant has appealed his detention order pursuant to 18 U.S.C. § 3145(b). Such an appeal is subject to *de novo* review, in which the Court must engage in a searching, "factbound inquiry" to determine the danger to the community and/or risk of flight. *United States v. Sabol*, 534 F. Supp. 3d 58, 69 (D.D.C. 2021) (EGS) (citing *Munchel*, 991 F.3d at 1283) (cleaned up).

In determining whether Defendant is a danger to the community or a flight risk, the Court considers the Section 3142(g) factors, including: (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence"; (3) "the history and characteristics" of the defendant; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C. § 3142(g). With respect to the second factor—the weight of the evidence—the Court notes that this factor is a "common-sense consideration." *United States v. Blackson*, No. 23-cr-25, 2023 WL 1778194, at *10 (D.D.C. Feb. 6, 2023) (BAH). If, for instance, the evidence is "overwhelming, credible, helpful, and important to the government's case in chief," then there may be an increased risk that the defendant "will flee to avoid future court proceedings," and it may further "indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Id.*

Conversely, if the evidence is "circumstantial, contradicted, or unreliable," then the defendant would have "less reason to duck court proceedings" and the evidence does not support the view that defendant is a danger to the community. *Id.*

The Court shall consider these factors based upon the present record without holding an additional hearing. *See Sheffield*, 799 F. Supp. 2d at 20 (permitting district court to use in its analysis the evidence relied on by the magistrate judge); *see also United States v. Anderson*, 384 F. Supp. 2d 32, 33–34 (D.D.C. 2005) (PLF) (taking into consideration the indictment, "the briefs and other papers submitted by the parties, the proceedings before [the magistrate judge], the [magistrate's] findings of fact and conclusions of law, and the evidence and proffers before [the court]"). Based on the current record, the Court concludes that clear and convincing evidence supports a finding that no condition or combination of conditions will "reasonably assure" the "safety of any other person and the community" or Defendant's appearance at trial. Accordingly, the Court orders that Defendant shall remain detained pending trial. *See* 18 U.S.C. § 3142(e)(1).

### B. Nature and Circumstances of the Offense Charged

Turning to the Section 3142(g) factors, the Court first considers the "nature and circumstances of the offense charged" including whether the offense involves "a controlled substance." 18 U.S.C. § 3142(g)(1). In this case, a rebuttable presumption of detention applies because Defendant has been charged by indictment with serious violations of the Controlled Substances Act. *See id.* § 3142(e)(3)(A); ECF No. 174 (operative indictment); *United States v. Brown*, 538 F. Supp. 3d 154, 165 (D.D.C. 2021) (RCL). Even the possession with intent to distribute "9.11 grams of fentanyl and .89 grams of powdered cocaine" triggers such a presumption. *Brown*, 538 F. Supp. 3d at 165–66. Here, a grand jury has found probable cause that Defendant was engaged in a conspiracy to distribute more than 400 grams of fentanyl that ran

9

from August 2020 until the present day, and the Government has presented evidence that Defendant was a "wholesale distributor of pills." *See* Gov't's Opp'n at 15–18, 20.  The Court must therefore presume that no condition or combination of conditions will reasonably assure Defendant's appearance as required or the safety of the community.

To rebut this presumption, Defendant must "offer some credible evidence" that he will not endanger the community or flee if released.  *United States v. Cherry*, 221 F. Supp. 3d 26, 32 (D.D.C. 2016) (GMH).  The Court finds that Defendant has failed to do so here.  In his Motion, Defendant concedes that he "knew individuals in California related to the allegations" in the operative indictment.  Mot. at 2.  Defendant, however, maintains that he played "a minor role and had limited interaction with other accused."  *Id.*  To support his "minor role," Defendant emphasizes that some of his alleged co-conspirators flew to and from California "delivering large quantities of fentanyl," whereas Defendant "never travelled outside his home state of California for purposes of trafficking illegal drugs."  *Id.*  The Court notes that the Government has not alleged, at least in its opposition to the pending Motion, that Defendant travelled to other states "for purposes of trafficking illegal drugs."  *Id.*; *see generally* Gov't's Opp'n.  Rather, the Government is alleging that Defendant was a "wholesale distributor" of the illegal drugs *in California*, and deliberately sold the illegal drugs—by the thousands—to other individuals including co-Defendant Valdez.  *See* Gov't's Opp'n at 15–18, 20.  In this regard, Defendant does not offer credible evidence to the contrary.  *See generally* Mot.

The Court concludes that the nature and circumstances of the offense weigh in favor of detention.  Defendant is charged with conspiring to distribute and possessing with intent to distribute 400 grams or more of a substance containing fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 846.  This charge carries a ten-year mandatory minimum sentence, with a maximum

of life. 21 U.S.C. § 841(b)(1)(A)(vi). As the Government puts it, "it is common knowledge that fentanyl kills," Gov't's Opp'n at 19; this investigation began with the overdose death of a D.C. resident who appears to have obtained her drugs through the member(s) of this conspiracy, *id.* at 3–4. "Moreover, this is not the case of an individual seller working alone." *Brown*, 538 F. Supp. 3d at 167. The Government alleges not just a conspiracy among the defendants in this action, but vast distribution across the United States. *See generally* Gov't's Opp'n. Therefore, Defendant's "alleged participation in the conspiracy charged thus strongly suggests that, if released, he would have the means to purchase and distribute narcotics and thereby endanger [not just] the D.C. community," but also communities throughout the United States. *Brown*, 538 F. Supp. 3d at 167.

Furthermore, the additional defendants in the third superseding indictment have been ordered detained pending trial as well. *See, e.g.*, ECF No. 167; ECF No. 182 (sealed); ECF No. 184; No. 191; ECF No. 231; ECF No. 255; ECF No. 276. In each of these cases, there was sufficient evidence of fentanyl drug trafficking to warrant and support their detention pending trial. Releasing this defendant, who is allegedly a "wholesale" fentanyl distributor in California, would be contrary to the other detention orders in effect. Therefore, the first factor weighs in favor of detention.

### C. Weight of the Evidence

The weight of the evidence against Defendant also favors continued pretrial detention. The Government presents communications between Defendant and co-Defendant Valdez, substantiating its claim that Defendant did in fact participate in this alleged conspiracy by dealing with illicit drugs. *See* Gov't's Opp'n at 15–18. The Government also recounts communications between Defendant and another social media account, indicating that Defendant would supply the illicit pills to customers. *Id.* at 18.

11

In all, the Court finds that the weight of this evidence is strong. *See Brown*, 538 F. Supp. 3d at 168–69. Given the evidence to date, this factor weighs in favor of detention. *See United States v. Brockhoff*, 590 F. Supp. 3d 295, 304 (D.D.C. 2022) (CKK); *see also Blackson*, 2023 WL 1778194, at *10.

### D. History and Characteristics of the Defendant

Under the third Section 3142(g) factor, the Court must consider a defendant's "history and characteristics," including his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history related to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3).

According to Defendant's Pretrial Services Report, Defendant has five (5) prior arrests and two (2) prior convictions. *See* Pretrial Services Report ("PSR"), ECF No. 284. One prior conviction involved "Alien Smuggling" in 2017 (and ultimately resulted in pretrial diversion), and another conviction involved "Transport/Sell Narcotics/Controlled Substances" in 2021. *Id.* at 3. The Government highlights that Defendant was still on probation for the latter conviction during the time of the alleged conspiracy in this case, which, according to the Government, "suggest[s] an inability or unwillingness to follow Court orders if released." Gov't's Opp'n at 21–22. Lastly, the Government notes that Defendant resides in southern California (San Diego), and his father was deported in 2013 and resides in Mexico. *Id.* at 21. As such, Defendant "appears [to] have ties to Mexico" and "suggest[s] he will flee" if released prior to trial.[2] *Id.*

On the other hand, Defendant appears to have significant ties to California. *See* Mot. at 2–3. He has a spouse, with whom he resides and has two (2) young children. *Id.* at 2. He was, at

---

[2] The Court notes that at least one co-defendant in this case allegedly would travel to Mexico "for resupply." Mem. Op., ECF No. 37, at 12. As such, Mexico may be a source of the counterfeit drugs.

12

least prior to his arrest, working as a painter with his local union. *Id.* at 2–3. His siblings (four in all) reside in California as well. *Id.* at 3. Although Defendant's father appears to now reside in Mexico, the record is not clear as to whether his mother still resides in California or now resides in Mexico as well. *See generally id.* at 2–3.

Although a close call, the Court concludes that this factor weighs slightly in favor of detention.

### E.  The Nature and Seriousness of the Danger Posed by Defendant's Release

The final factor that the Court must consider is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). Conspiring to distribute fentanyl presumptively renders a defendant a serious danger to the community. *See Brown*, 538 F. Supp. 3d at 170; *cf. also United States v. Bethea*, 763 F. Supp. 2d 50, 54 (D.D.C. 2011) (RCL) (narcotics trafficking generally). Particularly so given the vast amount of drugs at issue here. More generally, "the lethality of fentanyl and scourge of . . . opioids on this community [and communities around the country] further demonstrate the serious danger Defendant's release could pose." *United States v. Bolivar*, 455 F. Supp. 3d 1165, 1171 (D.N.M. 2020). And, the significant statutory penalties Defendant faces provide him with a strong incentive to flee.

Defendant argues that he is not a danger to the community, and states that he is a "medium risk level." Mot. at 4. However, Defendant does not explain what pretrial conditions would be "sufficient to ensure his appearance" in court and/or the safety of the community. *See generally id.* He simply emphasizes that pretrial conditions can be set and "is feasible." *Id.* at 1.

The Government, however, maintains that Defendant's proposed release pending trial "poses a specific and articulable risk to the community" given his charged offense (narcotics

13

trafficking). Gov't's Opp'n at 22. In addition, the Government notes that Defendant concedes he possessed the firearm recovered in his residence. *Id.* at 21; *see* Mot. at 2 ("A firearm was located in [Defendant's] home. It was *not* used in furtherance of any crimes but used as home protection.").

The Court must reasonably ensure the safety of any other person and the community. 18 U.S.C. § 3142(g). Here, the Government presented strong evidence indicating that Defendant knowingly and intentionally trafficked (or attempted to traffic) counterfeit pills by the thousands. *See generally* Gov't's Opp'n. As such, the Court's concern regarding the safety of the community, or Defendant's appearance at trial, is not alleviated. Therefore, this factor also weighs in favor of detention.

*       *       *

All in all, even if Defendant could rebut the presumption of detention, the Court finds that no set of conditions can address the threat of danger he poses to the community or mitigate his risk of flight. Notably, Defendant's PSR states: "No condition or combination of conditions can reasonably assure the defendant's appearance or safety to the community." PSR, ECF No. 284, at 1. The Government has shown that Defendant has a strong incentive to flee given the seriousness of the charges, the apparent weight of the evidence, his apparent ties to Mexico, and the substantial statutory penalties he is facing. Therefore, the Court concludes that the Section 3142(g) factors require pretrial detention.

### IV.   CONCLUSION

The record establishes, by clear and convincing evidence, that no condition or combination of conditions can be imposed that would reasonably assure the safety of the community or

Defendant's presence at trial if he was released pending trial. 18 U.S.C. § 3142(e)(1). Therefore, the Court **DENIES** Defendant's [312] Motion for Review of Detention.

**Dated:** May 15, 2024

 /s/
COLLEEN KOLLAR-KOTELLY
United States District Judge
